**In re MORGAN SANGAMON PARTNERSHIP, Debtor.**

**No. 01 B 06298.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

July 3, 2001.

Daniel Z. Zazove, Field & Golan, Chicago, IL, for plaintiff.

Alvin R. Becker, Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, Chicago, IL, for defendant.

### MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the motion of the Debtor, Morgan Sangamon Partnership (the "Partnership") to dismiss the involuntary bankruptcy petition filed against it by Leonard Sable, not individually but as Trustee for Coventry

Eye Care Center of Evanston Partnership Pension Fund ("Sable"). Sable claims that he is a general partner of the Debtor and thus had standing to file the involuntary petition under 11 U.S.C. § 303(b). The Partnership denies that Sable is a general partner. For the reasons set forth more fully below, the Court concludes that Sable is not a general partner of the Partnership and the involuntary petition will be dismissed.

## BACKGROUND

The parties do not dispute the facts of this case. They dispute only the legal conclusions to be drawn from those facts.

On May 21, 1993, Jerome L. Cedicci ("Cedicci"), Michael A. Perlstein ("Perlstein"), and Ronald D. Goodman ("Goodman") entered into a general partnership agreement (the "Agreement") to form the Partnership. Cedicci and Perlstein each acquired a 40% interest in the Partnership and Goodman acquired the remaining 20%. The three partners designated Cedicci and Perlstein as managing partners.

Paragraph 7(d)(vi) of the Agreement provides that no partner shall admit an additional or substitute partner without the written consent of all partners. Paragraph 10(b) (the "*Ipso Facto* Clause") provides in pertinent part:

> The ... bankruptcy of a partner "shall terminate and dissolve the Partnership, provided that the remaining Partners shall forthwith reconstitute the Partnership and continue to conduct the business of the Partnership. The successor in interest of such ... Partner shall succeed to and own the interest in the Partnership theretofore owned by his predecessor in interest and may be admitted as to a substituted partner of the Partnership with the approval of, and upon the terms and conditions designated by, the Managing Partners."

On February 28, 1998, Cedicci filed a voluntary chapter 7 petition. On April 20, 1999, the bankruptcy court entered an order authorizing Cedicci's chapter 7 trustee to sell all of Cedicci's rights, title and partnership interest as a 40% partner to Sable for the sum of $20,000 and providing that "[t]he managing partner of Morgan-Sangamon be and is hereby authorized and directed to transfer [Cedicci]'s partnership interest to Sable and to reflect such ownership transfer on the books and records of the partnership."

In a letter dated June 25, 1999, Perlstein wrote to Sable that "[a]s the general partner of the Morgan Sangamon partnership, I recognize the Order of Court and would share with you the books and records relating to same." On February 26, 2001, Sable filed the involuntary petition against the Partnership.

## DISCUSSION

■ As a threshold issue, the Court must decide what effect, if any, the *Ipso Facto* Clause had on the Partnership when Cedicci filed his chapter 7 petition. If, as the *Ipso Facto* Clause provides, the Partnership terminated and dissolved upon Cedicci's bankruptcy filing, then Cedicci ceased to be a general partner at that time and only his economic interest remained in the Partnership reconstituted with Perlstein and Goodman as the only general partners. In other words, if the *Ipso Facto* Clause is enforceable, then Cedicci's bankruptcy estate had no interest in the Partnership other than an economic interest. If that is the case, then all that Sable purchased from the bankruptcy estate was that economic interest and he cannot be a general partner. If he is not a general partner, then he has no standing to file an involuntary petition against the Partnership and the case must be dismissed without further ado.

The parties agree that the Agreement is an executory contract.[1] Therefore, the resolution of the issue begins with § 365 of the Bankruptcy Code, which governs the treatment of executory contracts and unexpired leases. Section 365(a) generally empowers a bankruptcy trustee to assume or reject any executory contract of the debtor. 11 U.S.C. § 365(a). Section 365(c)(1) limits this power by prohibiting the trustee from assuming or assigning a contract if applicable law excuses a party to the contract, other than the debtor, from accepting performance from anyone other than the debtor. 11 U.S.C. § 365(c)(1)(A). Section 365(e)(1)(B) generally renders unenforceable clauses, such as the *Ipso Facto* Clause, that terminate or modify the debtor's rights in the contract upon the filing of a bankruptcy petition. 11 U.S.C. § 365(e)(1)(B). However, 11 U.S.C. § 365(e)(2)(A) "expressly revives 'ipso facto' clauses in precisely the same executory contracts that fall within the scope of § 365(c)(1)." *Perlman v. Catapult Entertainment (In re Catapult Entertainment)*, 165 F.3d 747, 753 n. 6 (9th Cir.1999).

■■■ This leads to the question of whether applicable law excuses the general partners under a general partnership agreement from accepting a new and substituted general partner selected by someone other than themselves. In the Seventh Circuit, the exceptions to the trustee's powers to assume and assign contracts are not limited to personal services contracts. *Metropolitan Airports Comm'n. v. Northwest Airlines, Inc. (In re Midway Airlines, Inc.)*, 6 F.3d 492, 495 (7th Cir.1993). The question is whether state law would make the con-

tract assignable where the contract itself is silent. *Id.*

The state or applicable law is the Uniform Partnership Act, 805 ILCS 205/1 *et. seq.* Section 18(g) provides that "no person can become a member without the consent of all the partners." 805 ILCS 205/18(g). Section 26 defines a partner's interest only as "his share of the profits and surplus." 805 ILCS 205/26. Section 27 expressly provides that a conveyance of his partnership interest by a partner does convey partnership status to the assignee. 805 ILCS 205/27. Section 31(5) provides that the partnership is dissolved upon the bankruptcy of any partner. 805 ILCS 205/31(5).

It cannot be any more clear that under Illinois law, the *Ipso Facto* Clause is enforceable and the Partnership dissolved upon Cedicci's bankruptcy filing. Thus, Cedicci was not a general partner and all that his bankruptcy estate transferred to Sable was his partnership interest, which was his share of the profits or surplus. Sable did not become a general partner because of the transfer and he had no standing to file an involuntary petition against the Partnership.

## CONCLUSION

---

1. In fact, until the Court requested that the parties brief the questions raised by § 365(c) and § 356(e), Sable has insisted that Cedicci's bankruptcy filing terminated the Partnership pursuant to the *Ipso Facto* Clause. (Leonard Sable's Response to Debtor's Motion to Dismiss Involuntary Petition, at pp. 6–7).